UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BERG, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No.17 C 5016 |
| JORGE ALCAREZ, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5017 |
| SHAUN A. HOUSE, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5018 |
| SEAN HARRIS, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5021 |
| ROBERT CARLYLE, | |
| Plaintiff, | No. 17 C 5022 |
| DEMETRIOS PULLOS, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5026 |
| v. | |
| AKORN, INC.; JOHN N. KAPOOR; KENNETH S. ABRAMOWITZ; ADRIENNE L. GRAVES; RONALD M. JOHNSON; STEVEN J. MEYER; TERRY A. RAPPUHN; BRIAN TAMBI; and ALAN WEINSTEIN, | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in these six cases are shareholders of Akorn, Inc. They filed these cases (five of which were class actions) under the Private Securities Litigation Reform Act ostensibly to force Akorn to supplement the proxy statement it issued related to a proposed merger with another company called Fresenius Kabi AG. Before any of the classes were certified, Plaintiffs voluntarily dismissed their cases after Akorn agreed to pay $332,500 in attorneys' fees. *See* 17 C 5016, R. 56 at 6.

After the cases were voluntarily dismissed, another Akorn shareholder, named Theodore Frank, sought to intervene to argue that the $332,500 payment should be disgorged as unjust enrichment because the original claims were frivolous. Frank argued that the Seventh Circuit had condemned lawsuits like these, holding that cases seeking immaterial supplements to proxy statements are generally "no better than a racket" that "should be dismissed out of hand," unless the disclosures achieved are "plainly material." *See In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 724 (7th Cir. 2016). Faced with Frank's challenge, three of the Plaintiffs' attorneys disclaimed their right to the fees Akorn had paid. On that basis, the Court found Frank's motions to intervene in those three cases to be moot.

In the remaining three cases, the Court denied Frank's motion to intervene. The Court found that Frank's right to intervene could only be based on Plaintiffs' counsel's duty to him as a member of the putative class of Akorn shareholders. The Court reasoned further that Plaintiffs' counsel's duty was limited to a "duty not to prejudice the interests that putative class members have in their class action litigation." *See House v. Akorn, Inc.*, No. 17 C 5018, 2018 WL 4579781, at *2 (N.D. Ill.

Sept. 25, 2018) (quoting *Schick v. Berg*, 2004 WL 856298, at *6 (S.D.N.Y. Apr. 20, 2004)). But the Court found that the harm Frank had identified was not a harm to the class's claims but instead was a harm class counsel caused to Akorn by extracting the $322,500 payment, which could only be vindicated by a derivative action, which Frank had not filed. And the Court concluded further that because Frank alleged that the class claims were worthless, the value of the claims could not be prejudiced, and so Frank could not allege that Plaintffs' counsel had violated a duty to him as a member of the putative class and his motion to intervene could not be granted.

The Seventh Circuit rejected the idea that the harm necessary to confer Frank's standing was necessarily derived from prejudice to the class's claims. Instead, the Seventh Circuit held that "since class counsel and Akorn are looking out for their own interests rather than those of the class, intervention is appropriate." *See Alcarez v. Akorn, Inc.*, 99 F.4th 368, 375 (7th Cir. 2024). The Seventh Circuit also explained that Frank's claim "that the representative plaintiffs and their lawyers owed duties to him, personally, need not be processed through the mechanism for derivative litigation." *Id.* at 375. Instead, the Seventh Circuit agreed with Frank that "class counsel violated their duties to him when they used the class allegations as leverage to obtain private benefits." *Id.* at 374. For that reason, the Seventh Circuit remanded with instructions to permit Frank to intervene and seek relief under Federal Rule of Civil Procedure 60(b).

Although this Court previously denied Frank the right to intervene, this Court had permitted Frank to file a brief as a friend of the Court on the issue of whether

3

and how it should "exercise its inherent powers to police potential abuse of the judicial process—and abuse of the class mechanism in particular—and require plaintiffs' counsel to demonstrate that the disclosures for which they claim credit" satisfy the standard set forth by the Seventh Circuit in *Walgreen. See House v. Akorn, Inc.*, No. 17 C 5018, 2018 WL 4579781, at *3 (N.D. Ill. Sept. 25, 2018). After briefing from Frank and Plaintiffs in the remaining three cases, the Court found that "the disclosures sought in the three complaints at issue were not 'plainly material' and were worthless to the shareholders." *See House v. Akorn, Inc.*, 385 F. Supp. 3d 616, 623 (N.D. Ill. 2019). On that basis, the Court exercised its inherent authority to order counsel in the remaining three cases to return the attorneys' fees Akorn paid.

On appeal, the Seventh Circuit held that it was unnecessary for this Court to rely on its inherent power to apply the *Walgreen* standard. Instead, the Seventh Circuit noted that the Private Securities Litigation Reform Act ("PSLRA") requires the following:

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. §78u–4(c)(1). The Seventh Circuit explained that this judicial review required by the PSLRA to assure compliance with Rule 11 incorporates the "plainly material" standard the Seventh Circuit had articulated earlier in the *Walgreens* case. The court also stated specifically that these two standards—from the PSLRA and

4

*Walgreens*—must be applied in this case because the "dismissal of each suit was a 'final adjudication of the action,'" and so this Court is "obliged . . . to determine whether each suit was proper at the moment it was filed." *See Alcarez*, 99 F.4th at 376. The Seventh Circuit explained further that once Frank was permitted to intervene on remand, he could make a motion under Rule 60(b) asking this Court to comply with this obligation imposed by the PSLRA and give Plaintiffs' counsel an opportunity to be heard. *See id.* at 377. That is what Frank has done by filing this motion.

Plaintiffs' counsel argue that this is an inappropriate procedure because they contend the voluntary dismissal in this case "is not a 'final adjudication' that invokes Rule 11 review under the PSLRA." R. 135 at 5; *see also* R. 136 at 6-7 ("[T]he PSLRA's sanctions provision is facially inapplicable and does not provide authority to issue sanctions.") But as Frank points out, this contention is "boldly" in contradiction of the Seventh Circuit's holding. *See* R. 140 at 2. True, Plaintiffs' counsel cite case law in support of their argument. *See* R. 135 at 5. But this Court is bound by the Seventh Circuit's direct command that the PSLRA standard applies here and that this Court should apply it.

In its prior opinion, this Court analyzed whether the disclosures Plaintiffs' sought in three of the lawsuits were "plainly material" as *Walgreens* requires. *See House v. Akorn, Inc.*, 385 F. Supp. 3d 616, 623 (N.D. Ill. 2019). And the Seventh Circuit held that this analysis still "holds" in applying the PSLRA's required review under Rule 11. *See Alcarez*, 99 F.4th at 377. So the Court won't repeat it here.

5

The Court, however, has not previously addressed certain other allegations because they were only at issue in the three cases where counsel disclaimed fees and the Court (incorrectly) found the cases to be moot. They are the following alleged misrepresentations or omissions:

- failure to disclose whether Akorn's chairman received or accepted an investment agreement;
- failure to disclose Akorn's projected net debt as of April 21, 2017;
- failure to disclose the timing and nature of post-merger employment offers and communications;
- failure to disclose confidentiality agreements with any other potential bidders; and
- failure to disclose the basis for Akorn's rejection of the "contingent value right" proposed by Fresenius.

The Court addresses them now in the first instance.

***Investment Agreement***. John Kapoor was Akorn's board chairman. The proxy statement provided that part of the merger negotiations involved a proposal that Kapoor invest in the company that would result from the merger. Plaintiffs sought disclosure of "the timing and nature of discussions regarding Kapoor's opportunity to invest . . . whether an agreement was ultimately reached, and the terms of such agreement." *See* 17-cv-05016, R. 1 at 13. The proxy statement was later amended to clarify that there were "no other substantive discussions with respect to such an

investment by Dr. Kapoor and no agreement with respect to such an investment was ever entered into." *See* 17-cv-05016, R. 85-2 at 14.

Plaintiffs' counsel argue that the "fact that the investment proposal was tied to the merger consideration makes this information and the outcome of the negotiations critical to weighing the fairness of the merger." *See* 17-cv-05016, R. 135 at 21-22. But Akorn disclosed the fact that this offer was made to Kapoor. Shareholders can safely assume that the offer was not accepted because if it had been disclosure of that fact would also have been required. Indeed, it is difficult to conceive of how such a fact could have possibly been concealed. With the offer having been disclosed, common sense dictates that the lack of further mention of the offer indicates that the offer was not accepted and was not an aspect of the final deal. Thus, the disclosure of that fact was not material.

***Net Debt***. Plaintiffs sought disclosure of Akorn's "projected net debt as of April 21, 2017." *See* 17-cv-05016, R. 1 at 11-12. Plaintiffs' counsel argue that this was a material disclosure because an investigation by Fresenius uncovered "undisclosed material deficiencies in the information that Akorn had produced to it during the deal negotiations, which led to litigation between the two." *See* 17-cv-05016, R. 135 at 19. But Plaintiffs' counsel does not contend that the projected net debt information Plaintiffs sought was one of the "undisclosed material deficiencies" at issue. Certainly, Fresenius possessed information about Akorn's finances and business beyond the information in the proxy statement. Fresenius's lawsuit concerning contractually required disclosures has little relevance to Akorn's obligations to make

7

disclosures to its shareholders in the proxy statement. Without a more specific argument about why the "projected net debt" Plaintiffs' sought was material to the shareholders' decision to approve the merger, the Court cannot find that that information was necessary to provide shareholders with a "fair summary" of the company's valuation, which is all that is required. *See In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 901 (Del. Ch. 2016) (the company "does not need to provide sufficient data to allow the stockholders to perform their own independent valuation").

***Employment Offers***. Plaintiffs sought disclosure concerning agreements for post-merger employment because it was "necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders." *See* 17-cv-05016, R. 1 ¶ 60. But the proxy statement provided that "there are no employment, equity contribution or other agreements, arrangements or understandings between any of the Company's directors or executive officers, on the one hand, and Fresenius Kabi, on the other hand, and the merger is not conditioned upon any of the Company's directors or executive officers entering into any such agreement, arrangement or understanding." Ex. 1 at 52-53. There simply was no basis to seek any further disclosure on this issue. Notably, Plaintiffs' counsel do not address this disclosure in their briefs on this motion.

8

***Confidentiality Agreements***. Plaintiff Berg sought disclosure of any other confidentiality agreements entered into with other potential bidders. But with regard to other potential bidders, the proxy statement provided that the Board determined that "it was highly unlikely that any of those counterparties would be interested in an acquisition of the Company at that time due to competing strategic priorities and recent acquisitions in the industry." 17 C 5022, R. 1 ¶¶ 58-59. This statement speaks for itself regarding why the Board rejected other potential buyers. And the proxy gives much greater detail regarding the one other company ("Company E") Akorn actually considered. Detailed information about potential buyers Akorn did not actually consider, and confidentiality agreements about the same, are not material.

***Contingent Value Right***. Plaintiff Berg argued that Akorn should disclose the reason Akorn informed Fresenius that Akorn required removal of "the significant contingent value right component from the proposed merger consideration." 17 C 05016, R. 1 at 14. The "contingent value right" was a provision tying merger compensation to certain sales targets. The board obviously believed that this contingency was not in the best interests of shareholders. Further disclosure would not have been material. Plaintiffs do not address this issue in their briefs on this motion.

***J.P. Morgan's Compensation***. In the Court's original opinion on the materiality of the disclosures Plaintiffs demanded, the Court found that Plaintiffs' demand for disclosure of "the exact amount of money J.P. Morgan received and may continue to receive from [Fresenius] while acting as Akorn's financial advisor," was

9

not material. *See House*, 385 F. Supp. 3d at 621. The Court explained that exact historical payments are not material. *See Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742, 753 (S.D. Ind. 2017) ("Additionally, Plaintiffs have not presented any evidence or case law establishing that the inclusion of historical fees in similar situations is material.").

On this motion, Plaintiffs' counsel argue that 17 C.F.R. § 229.1015(b)(4) requires disclosure of "specific amounts" of compensation. To the contrary, the regulation actually only requires "description" of "any compensation." Courts have held that, "[g]enerally the disclosure of the specific fees a financial advisor received . . . is immaterial where the relationship and its rough scale are disclosed." *See, e.g.*, *Assad v. Botha*, 2023 WL 7121419, at *6 (Del. Ch. Oct. 30, 2023). As the Court found in its initial opinion, Akorn made the necessary disclosures regarding J.P. Morgan's compensation. The specific compensation amounts were not material.

\*     \*     \*     \*

The Court finds that none of the disclosures sought by Plaintiffs pursuant to the PSLRA were "plainly material." According to the Seventh Circuit, PSLRA claims for disclosure of information that are not plainly material are frivolous and violate Rule 11, and thus are sanctionable.

Frank suggests that it is necessary for him to file a complaint in this case in order to seek sanctions. The Court does not see why. The Seventh Circuit clearly stated that this Court has an inherent obligation to undertake the review provided by the PSLRA. *See Alcarez*, 99 F.4th at 376 ("The district court must make the

10

required findings whether or not a litigant asks."). Frank intervened and filed a Rule 60(b) motion to alert the Court to this obligation and to ask the Court to comply with it. The Court has done so. Nothing more is left but to address the appropriate sanction.

## Conclusion

For these reasons, Frank's motion [129] is granted. The Court finds that Plaintiffs' counsel violated § 78u-4(c)(1) and Rule 11 by filing complaints for an improper purpose, and the Court affirms its order that attorneys' fees should be returned as a sanction. Plaintiffs' counsel has had a sufficient opportunity to be heard on these two issues in the briefs on these motions.

Frank suggests several additional sanctions that would be appropriate:

1. Requiring all signing Plaintiffs' counsel and their firms to disclose and cite the finding, along with the *Alcarez* opinion, in any future lawsuits or demand letters concerning corporate merger transactions, including tender offers.

2. Requiring counsel to disclose retention agreements with the Plaintiffs.

3. Requiring counsel to disclose all purported mootness fees extracted by them in similar suits and demand letters, which will allow courts, academics, and lawmakers to evaluate the scope of the problem and whether reforms should be enacted to curb the conduct.

4. Imposing monetary penalties.

*See* R. 129 at 24-25. The Court is inclined to order Frank's first three suggestions but disinclined to order the fourth of imposing further monetary sanctions. Plaintiffs' counsel, however, only briefly responded to these suggestions, so the Court orders

11

further briefing on the propriety of additional sanctions. Each Plaintiffs' attorney implicated in these cases is permitted a brief of not more than ten pages, due by 4/21/2025. Frank is permitted a reply brief of no more than 20 pages, due by 5/5/2025.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 10, 2025